IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERTRAN CORPORATION,            :
     Plaintiff
                              :

     vs.                          :   CIVIL NO. 1:CV-08-0684

                              :
RAILQUIP, INC.,
     Defendant                    :


*M E M O R A N D U M*


*I.   Introduction*

       We are considering a motion to dismiss (doc. 10) filed
by the Defendant, Railquip, Inc.  Plaintiff, Intertran
Corporation, a sales agent for rail industry equipment
manufacturers, commenced this breach of contract action seeking
damages for commissions it alleges it is owed from Railquip.
Intertran also seeks a declaratory judgment allowing it to
compete against Railquip.  Having reviewed the complaint and the
briefs, we will deny the motion to dismiss for lack of subject
matter jurisdiction.  We will, however, grant the motion to
dismiss for improper venue and transfer this case to the
Northern District of Georgia.


*II.  Background*

       Intertran, a Delaware corporation with an office in
York, Pennsylvania, represents rail industry equipment

manufacturers as an independent sales agent. (doc. 1, ¶ 1). Railquip, based in Atlanta, Georgia, provides rail products to the railroad and rail transit industries. *Id.* ¶ 2. In February 1999, Hans Von Lange, who later formed Intertran, entered into a contract with Railquip to serve as its independent sales agent. *Id.* ¶ 5. Von Lange's sales region included eleven northeastern and mid-Atlantic states along with Washington, D.C. and northern Virginia. *Id.* When Von Lange formed Intertran, the parties amended the contract to reflect its creation. *Id.* ¶ 6.

The contract granted Intertran the exclusive right to sell Railquip's products to rail companies within the sales region. *Id.* ¶ 7. Under the contract, neither Railquip nor Intertran had a right to control the activities and operations of the other. *Id.* ¶ 8. Additionally, the contract did not place restrictions on Intertran's sales accounts, except that accounts with other manufacturers could not include items or products in Railquip's product line. *Id.* ¶ 9. If Intertran wanted to sell competing product lines to customers it serviced for Railquip, it was required to offer Railquip a right of first refusal. *Id.* ¶ 10. Intertran also could not sell Railquip's products to its competitors without first receiving Railquip's permission. *Id.* ¶ 11. The parties could terminate the contract for any reason with sixty days' written notice, or immediately upon breach of the contract by one of the parties. *Id.* ¶ 12.

With respect to compensation, Railquip agreed to pay Intertran a ten percent commission on the net value of any products shipped to customers within Intertran's sales region. *Id.* ¶ 13. Under the contract, Intertran would receive a commission for shipments of products within its sales region regardless of whether Intertran itself made the sale. *Id.* ¶ 15. Upon termination of the contract, Intertran was entitled to a commission for all shipments on orders received from the sales region within twelve months of the termination date. *Id.* ¶ 14. Upon termination of the contract, Intertran was not precluded from conducting business with former Railquip customers, serving as a sales agent for Railquip's competitors, or competing against Railquip. *Id.* ¶ 16.

Intertran served as Railquip's sales agent from 1999 through March 18, 2008. *Id.* ¶ 17. On that date, Railquip provided written notice of its immediate termination of the contract based on its belief that Intertran was conducting business with Railquip's competitors. *Id.* ¶¶ 18, 19. Railquip claimed that Intertran was serving as a sales representative for Schoerling-Brock GmbH, a Railquip competitor, and had started negotiations with Pfaff Silberblau, another competitor. *Id.* ¶¶ 20, 25. On March 24, 2008, Intertran responded to Railquip's termination letter, disputing its rationale and seeking further discussions between the parties. *Id.* ¶ 28. Counsel for Railquip replied on March 28, 2008, explaining that it had

3

terminated the contract and, therefore, "no further debate is necessary." *Id*. ¶ 29.

Intertran seeks damages based on commissions it is or will be owed for sales of Railquip products prior to or after the termination of the contract on March 18, 2008. Before that date, a purchaser in New York entered into an agreement to buy $3,409,260.00 in Railquip products. *Id*. ¶ 30. Based on this purchase agreement, Intertran contends that it "will be entitled" to approximately $340,926.00 as its commission for the order when it ships. *Id*. Second, Intertran claims that at the time Railquip terminated the contract, there were several other orders which would have yielded approximately $8,000.00 in commissions. *Id*. ¶ 31. Third, Intertran contends that it is entitled to commissions for additional orders from its sales region during the twelve months following the termination of the contract. *Id*. ¶ 32. Intertran argues that Railquip will refuse to pay the commissions for these future orders, in violation of the terms of the contract. *Id*. ¶ 34.

According to Intertran, Railquip also solicited orders from Intertran's customers without notifying Intertran. *Id*. ¶ 35. Intertran claims that it is entitled to commissions from the receipt of these orders as well. *Id*. ¶ 36. Specifically, the complaint alleges that Railquip had a secret dealing with an Intertran customer in Philadelphia. *Id*. ¶ 35.

4

Finally, Intertran contends that Railquip improperly calculated its commissions. *Id*. ¶ 37. The contract provided for the ten percent commission to be calculated from the net value of Railquip's products after deducting, among other things, shipping costs. *Id*. ¶ 13; doc. 1, ex. A. According to Intertran, Railquip improperly deducted a seven percent amount from the total value of all shipments to cover shipping costs prior to calculating Intertran's commission. *Id*. ¶ 37. Intertran alleges that the seven percent reduction was greater than Railquip's actual shipping costs and seeks damages based on the difference. *Id*. ¶ 38.

In addition to the breach of contract claim, Intertran seeks a declaratory judgment allowing it to solicit business from former customers, compete against Railquip, contact Railquip's competitors, and serve as a sales agent for Railquip's competitors. *Id*. ¶ 73. Intertran argues that a declaratory judgment is necessary because Railquip has threatened to take legal action to prevent Intertran from competing against Railquip in the future. *Id*. ¶ 45.

*III. Discussion*

Railquip's motion raises a number of arguments in support of dismissing or transferring this case. Railquip argues that we lack subject matter jurisdiction because Intertran's claim does not meet the amount-in-controversy

requirement for diversity cases. *See* Fed. R. Civ. P. 12(b)(1).

Second, pursuant to Rule 12(b)(6), Railquip argues that

Intertran has failed to state a claim upon which relief may be

granted.  Third, according to Railquip, a declaratory judgment

would be premature as there is no case or controversy ripe for

judicial disposition.  Fourth, Railquip argues that the Middle

District of Pennsylvania is an improper venue for Intertran's

case. *See* Fed. R. Civ. P. 12(b)(3).  Alternatively, Railquip

argues that the case should be transferred to the Northern

District of Georgia based on the doctrine of *forum non*

*conveniens*.  Having reviewed the parties' briefs, we conclude

that the Middle District of Pennsylvania is an improper venue

and we will transfer the case to the Northern District of

Georgia.  Accordingly, we will not address Railquip's failure to

state a claim, declaratory judgment, and *forum non conveniens*

arguments.

   A.   *Subject Matter Jurisdiction*

       Railquip argues that we lack subject matter

jurisdiction because Intertran's claim does not satisfy the

$75,000 amount-in-controversy requirement for diversity cases.

*See* 28 U.S.C. § 1332(a).  We must address this argument prior to

considering Railquip's venue argument. *See Fitzgerald v. Vogel*,

No. 02-7849, 2003 WL 203562, at *1 (E.D. Pa. Jan. 29, 2003)

(citing 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and

PROCEDURE § 3827 (2d ed. 1986) and *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).

According to Railquip, approximately $340,000 of Intertran's damages claim is not yet payable and may not be used to satisfy the $75,000 jurisdictional threshold. (doc. 11, pp. 5-6). Railquip points out that Intertran alleges that it "will be" entitled to the $340,000 commission when Railquip satisfies the purchase order in question and that "Railquip will refuse to pay Intertran these commissions." *Id.* at 8-9. Railquip argues that future payments which may become due after the filing of a complaint may not be used to satisfy the amount-in-controversy requirement in diversity cases. *Id.* at 6 (citing *Gray v. Occidental Life Ins. Co.*, 387 F.2d 935, 936 (3d Cir. 1968); *Hilley v. Mass. Mut. Life Ins. Co.*, 32 F. Supp. 2d 195, 197 (E.D. Pa. 1998)). Without the $340,000 in future commission payments, Railquip argues, Intertran's remaining damages claims do not exceed $75,000. *Id.* at 7 n.1.

In response, Intertran, citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938), argues that it is not apparent to a "legal certainty" that it cannot recover damages in excess of $75,000. (doc. 12, pp. 6-7). Intertran argues that the damages for unpaid commissions pertaining to concealed orders and improperly calculated commissions are sufficient to meet the jurisdictional limit. *Id.*

For a party to invoke this court's diversity
jurisdiction, 28 U.S.C. § 1332 requires complete diversity of
citizenship and an amount in controversy in excess of $75,000.
While there is no dispute regarding diversity, *see* doc. 11, p.
6, Railquip contends that the amount in controversy is less than
$75,000.  *Id*.  A party may either facially or factually
challenge a court's subject matter jurisdiction under Rule
12(b)(1).  *Gould Elec. Inc. v. United States*, 220 F.3d 169, 176
(3d Cir. 2000).  In a facial challenge, we consider whether the
pleadings fail to present an action within our jurisdiction even
if plaintiff's allegations are taken as true.  *Tolan v. United
States*, 176 F.R.D. 507, 509 (E.D. Pa. 1998).  We will grant such
a motion only if we conclude with certainty that the exercise of
jurisdiction is improper.  *Id*.  A factual attack, on the other
hand, "argues that, although the pleadings facially satisfy
jurisdictional prerequisites, one or more of the allegations is
untrue, rendering the controversy outside of the court's
jurisdiction."  *Bosley v. Bosley*, No. 07-1380, 2008 WL 2048665,
at *2 (M.D. Pa. May 12, 2008) (Conner, J.).  In a factual
attack, we evaluate the merits of the allegations in the
pleadings.  *Id*.

Railquip focuses on Intertran's allegations that
Railquip breached the contract based on its refusal to pay a
commission that is not yet payable.  Specifically, Railquip
argues that the $340,926.00 commission from an order placed

prior to the termination of the contract is not yet payable because the order has not been fulfilled. (doc. 13, p. 3). In arguing that a future payment may not be used to satisfy the amount-in-controversy requirement, *see* doc. 11, p. 5 (citing *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999)), Railquip makes a facial attack on the sufficiency of the allegations in the complaint. Accordingly, we "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *Gould*, 220 F.3d at 175, and determine whether each element necessary for jurisdiction is present. *Tolan*, 176 F.R.D. at 510.

Viewing the allegations in the light most favorable to Intertran, we reject Railquip's facial challenge. In evaluating a facial challenge to the amount in controversy, we consider whether it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." *Red Cab*, 303 U.S. at 289.[1] We may dismiss a complaint only if it "is certain that the jurisdictional amount cannot be met." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995). In applying the legal certainty test, we are

---

[1] We reject Railquip's argument that *Red Cab*'s holding is limited to "the nature of the defendant's burden in a removal case where a complaint was amended following removal to allege damages less than the federal jurisdictional amount." (doc. 13, p. 4). *See, e.g., Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997) (applying *Red Cab*'s "legal certainty" test in challenge to amount in controversy in diversity case).

persuaded by the discussion in *Davis-Giovinzazzo Constr. Co., Inc. v. Tatko Stone Prod., Inc.*, No. 06-1270, 2007 WL 1166054, at *3 (E.D. Pa. Apr. 18, 2007): "[A] plaintiff fails to allege the statutory minimum of Section 1332 if, *as a matter of law*, she is not entitled to the amount she seeks even if she were to succeed on each of her claims."

Here, we cannot determine to a legal certainty that Intertran will recover $75,000 or less in its breach of contract claim.  First, there is no statutory limit on damages for Intertran's breach of contract claim.  *See id*.  Second, while Railquip's argument regarding future damages is well taken, Intertran's complaint also alleges damages based on commissions from concealed orders, improperly calculated commissions, *see* doc. 12, p. 7, and approximately $8,000 in commissions already payable, doc. 1, ¶ 31; doc. 11, p. 3.  Reviewing these damages allegations in the light most favorable to Intertran, as we must at this point, and lacking any indication that the claims were not made in good faith, we cannot conclude to a "legal certainty" that Intertran would recover $75,000 or less in damages.

B.    *Venue*

Intertran filed its complaint in the Middle District of Pennsylvania claiming that "a substantial number of the acts and omissions that give rise to this action occurred in this District." (doc. 1, ¶ 4).  In seeking to have the complaint

10

dismissed or transferred, Railquip argues that the Middle District of Pennsylvania is not the proper venue for Intertran's action. (doc. 11, p. 12). We agree and we will transfer Intertran's complaint to the Northern District of Georgia.

Intertran cites 28 U.S.C. § 1391(a)(2) in support of laying venue here in the Middle District of Pennsylvania. Under that portion of the venue statute, a party in a diversity case can bring a suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." 28 U.S.C. § 1391(a)(2). In *Cottman Transmission Sys., Inc., v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994), the Third Circuit instructed courts considering venue under § 1391(a)(2) to look to "the location of those 'events or omissions giving rise to the claim,'" not "the defendant's 'contacts' with a particular district . . . ." The statutory language, as amended in 1990, "still favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be 'substantial.'" *Id*. "In assessing whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." *Id*. at 295. Events or omissions with only a tangential connection to the dispute are not enough. *Id*. at 294.

Here, we must determine whether substantial events or omissions giving rise to Intertran's breach of contract claim

occurred in the Middle District of Pennsylvania.  In arguing
that venue is improper, Railquip points to Intertran's
activities as a sales agent.  (doc. 11, p. 13).  According to
Railquip, Intertran's sales territory included many states
outside of Pennsylvania.  *Id*.  Additionally, none of the sales
at issue are alleged to have occurred in this District.  *Id*.
Third, the bulk of Intertran's claim for damages concerns a sale
to a New York corporation.  *Id*.  Railquip points out that
Intertran's only connection with this District is the location
of its office in York, Pennsylvania.  (doc. 13, p. 9).

In support of venue being in the Middle District of
Pennsylvania, Intertran lists its contacts with the District.
Intertran notes that it negotiated the contract establishing its
status as Railquip's sales agent here, its business operations
are based in this District, and it performed the contract
throughout the northeastern United States, including the Middle
District of Pennsylvania.  (doc. 12, p. 13).[2]  Intertran also
notes that Railquip solicited sales in Pennsylvania and up to
ten percent of its orders originated in Pennsylvania.  *Id*.
Intertran claims that it was foreseeable that Railquip could be
haled in to court here.  *Id*.

---

[2]  While Intertran negotiated the agreement in Pennsylvania,
Railquip notes that it negotiated and executed the agreement in
Georgia.  *See* doc. 11, Schroeder Affidavit.  We are concerned,
however, with events giving rise to the breach of the contract, not
simply its negotiation and execution.  *See generally Fin. Mgmt.
Serv., Inc. v. Coburn Supply Co., Inc.*, No. 02-C-8928, 2003 WL
255232, at *2 (N.D. Ill. Feb. 5, 2003).

Despite Intertran's arguments, venue is improper in this District because the events and omissions giving rise to Intertran's breach of contract claim, as they are alleged, do not have a connection here.  Initially, we decline to adopt Intertran's approach of determining venue based on Railquip's contacts with this District.  *See Cottman*, 36 F.3d at 294. Focusing on the events or omissions giving rise to the claims, we note that the complaint references four events or omissions: (1) Railquip's likely refusal to pay Intertran a $340,926 commission for a sale made to a purchaser in New York, doc. 1, ¶ 30; (2) Railquip's refusal to pay commissions from other sales, *id*. ¶ 31; (3) Railquip's deduction of a flat-rate for shipping costs prior to calculating Intertran's commission, *id*. ¶ 38; and (4) Railquip's concealment of purchase orders obtained from Intertran's customers without its knowledge, including an order from a customer located in Philadelphia, *id*. ¶¶ 35, 36. Railquip's likely refusal to pay Intertran's commission for the New York sale, its refusal to pay commissions on other sales, and the erroneous shipping calculations concern a failure to remit commissions by Railquip--located in Atlanta, Georgia--to Intertran--located in York, Pennsylvania.  For purposes of our venue analysis, these acts or omissions occurred in Georgia, not in the Middle District of Pennsylvania.  *See Cottman*, 36 F.3d at 295 (in action based in part on Michigan franchisee's failure to remit payments to Pennsylvania franchisor, relevant "omission"

13

for venue analysis occurred in Michigan). *See also Mandelbaum v. Hornstein*, No. 05-4052, 2006 WL 3019546, at *2 (D.N.J. Oct. 23, 2006) (rejecting argument that a New York party's failure to remit commissions to a New Jersey party was a "substantial act or omission" occurring in New Jersey); *Lackawanna Chapter of Ry. & Locomotive Historical Soc'y v. St. Louis County, MO*, No. 02-994, 2004 WL 503447, at *4 (M.D. Pa. Mar. 12, 2004) (Vanaskie, Chief J.). Railquip's alleged concealment of purchase orders also bears no identifiable connection with the Middle District of Pennsylvania. The only dealing identified is alleged to have occurred in Philadelphia, located in the Eastern District of Pennsylvania. (doc. 1, ¶ 35). There is no indication as to whether other dealings occurred in this District or in any of the states in Intertran's sales territory. *See* doc. 1, ¶¶ 35, 36 (allegations pertaining to this claim).

Intertran's reliance on *Silva v. Maryland Screen Printers, Inc.*, No. 04-2018, 2005 WL 2250842 (M.D. Pa. Sept. 15, 2005) (Kane, J.), to support his venue argument is misplaced. In *Silva*, an action for wages brought by a Pennsylvania resident against his Maryland employer, the Court evaluated the defendant's jurisdictional and venue arguments. In determining that it could exercise specific jurisdiction over the Maryland employer, the Court highlighted the link between the employer's contacts with Pennsylvania and the plaintiff's claims. *Id.* at *4. Despite noting that not all of the plaintiff's claims

14

concerned the employer's activities in Pennsylvania, the Court concluded that "Plaintiff has adequately demonstrated that his cause of action arises out of and relates to his dealing with the Defendant, as its agent, in Pennsylvania." *Id*. Based on its findings regarding specific jurisdiction, the Court also determined that the Middle District was the proper venue for the action. *Id*. Unlike *Silva*, Intertran has not adequately demonstrated that his breach of contract action arises out of and relates to Railquip's activities in the Middle District. As discussed above, Intertran's complaint lacks allegations linking the Middle District and the acts or omissions supporting the breach of contract claim. As discussed *supra*, we view Railquip's failure to remit commissions as an event or omission which occurred in Georgia, not the Middle District of Pennsylvania.

We cannot say that a substantial part of the events or omissions giving rise to Intertran's breach of contract claim occurred in the Middle District of Pennsylvania. Therefore, we will transfer this action as discussed below.

    C.   *Transfer*

Guidelines for transfer or dismissal of a case based on improper venue are found in 28 U.S.C. §§ 1404 and 1406. If a case is filed in an improper venue, § 1406 allows us to dismiss the case or to transfer it to "any district . . . in which it could have been brought." *See* 28 U.S.C. § 1406(a).

15

Railquip contends that the Northern District of Georgia is the proper venue.  (doc. 11, p. 2).  We agree.  As a substantial part of the acts or omissions underlying the breach of contract claim occurred in Atlanta, where Railquip is located, Intertran's action could have been filed in the Northern District of Georgia, which embraces Atlanta.  *See* 28 U.S.C. § 1391(a)(2).  Therefore, we will transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1406(a).

<u>/s/William W. Caldwell</u>
William W. Caldwell
United States District Judge

Date: August 22, 2008

16

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

INTERTRAN CORPORATION,                  :
      Plaintiff
                                        :

      vs.                               :     CIVIL NO. 1:CV-08-0684

                                        :
RAILQUIP, INC.,
      Defendant                         :


O R D E R

AND NOW, this 22nd day of August, 2008, upon

consideration of Defendant Railquip, Inc.'s Motion to Dismiss

(doc. 10), filed May 19, 2008, and pursuant to the accompanying

Memorandum, it is ordered that:

     1.  Defendant's motion to dismiss for
    improper venue is granted;

     2.  The Clerk of Court is directed to
    transfer this case to the United States
    District Court for the Northern District of
    Georgia;

     3.  The Clerk of Court shall close this
    file.


                   /s/William W. Caldwell
                   William W. Caldwell
                   United States District Judge